**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

GEMINATIO, INC.,

                    Plaintiff,

v.                                                          1:25-cv-00361 (AMN/TWD)

PHILIP HUSTAD & VIONANO INNOVATIONS,
INC.,

                    Defendants.

───────────────────────────────

**APPEARANCES:**                                          **OF COUNSEL:**

**HARRIS BEACH MURTHA CULLINA PLLC**           **DANIEL R. LECOURS, ESQ.**
677 Broadway – Suite 1101
Albany, New York 12207

**HARRIS ST. LAURENT & WECHSLER LLP**          **DAVID S. WECHSLER, ESQ.**
**40 WALL STREET – 53RD FLOOR**                **JUANNELL RILEY**
New York, New York 10005
*Attorneys for Plaintiff*

**BOND SCHOENECK & KING, PLLC**                **BRIAN J. BUTLER, ESQ.**
One Lincoln Center
Syracuse, New York 13202

350 Linden Oaks, Third Floor                   **JEFFREY T. ALLEN, ESQ.**
Rochester, New York 14625                      **JEREMY M. SHER, ESQ.**

Avant Building – Suite 900                     **JEREMY P. OCZEK, ESQ.**
200 Delaware Avenue
Buffalo, New York 14202
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION & ORDER

## I.     INTRODUCTION

On March 21, 2025, Plaintiff Geminatio, Inc. ("Geminatio") filed a complaint pursuant to 18 U.S.C. § 1836, as well as Minnesota and New York state law, against Defendants Dr. Philip Hustad and VioNano Innovations, Inc. ("VioNano").  *See* Dkt. No. 1 ("Complaint").[1]  The Complaint alleges that Defendant Hustad (1) breached a Proprietary Information and Inventions Agreement ("PIIA") he executed while employed at Geminatio; (2) violated federal and state trade secret protections by allegedly disclosing inventions and intellectual property conceived during Hustad's employment with Geminatio in an effort to compete against Geminatio via Defendant VioNano; (3) breached his fiduciary duties to Geminatio; and (4) tortiously interfered with Geminatio's economic advantage.  *See* Dkt. No. 1 at ¶¶ 48-87.  Alongside the Complaint, Plaintiff filed an emergency order to show cause requesting a temporary restraining order, preliminary injunction, and expedited discovery pursuant to Fed. R. Civ. P. 65(b)(1) and Northern District of New York Local Rules 7.1(e) and 65.1.  *See* Dkt. No. 7 ("Motion").  On March 24, 2025, the Court denied the portion of the Motion seeking an *ex parte* temporary restraining order.  *See* Dkt. No. 8. On April 9, 2025, the Court held a hearing regarding the remaining portions of the Motion, which are now ripe for adjudication.  *See* Dkt. No. 23.

For the following reasons, Plaintiff's Motion is denied.

## II.     BACKGROUND

### A.  The Parties

Plaintiff Geminatio is a manufacturer of advanced chemical solutions with a principal place of business in Schenectady, New York.  Dkt. No. 1 at ¶¶ 1, 12.  Incorporated in Delaware in

---

[1] Plaintiff asserts, and Defendants do not dispute, that venue is appropriate in this District based on a forum selection clause contained in an employment agreement executed between Plaintiff and Defendant Hustad.  *See* Dkt. No. 1 at ¶ 17, Ex. A.

January 2021, Geminatio has three full-time employees and a varying number of temporary employees. *Id.* at ¶ 12.

Defendant Hustad is a former employee of Geminatio who currently resides in the state of Minnesota. *Id.* at ¶ 13. Hustad was hired as Geminatio's Chief Technology Officer ("C.T.O.") in January 2022 but resigned in September 2024. *Id.* at ¶¶ 2, 9. Upon his resignation, Defendant Hustad formed Defendant VioNano with non-party George Barclay. *Id.* at ¶ 9. VioNano was incorporated in Delaware in November 2024 and maintains a principal place of business in South Grafton, Massachusetts. *Id.* at ¶ 14.

**B. Geminatio's Business and Expansion Goals**

As part of its advanced chemical solutions manufacturing business, Geminatio sells and licenses custom chemistry that is used to improve semiconductor performance by creating smaller design features on silicon wafers—a process known as "pitch-splitting" or "pitch-doubling." *Id.* at ¶ 1 n.1. Since its inception, Geminatio has used an acid-based diffusion technique to accomplish pitch-splitting on chemically amplified resists ("CAR"), but it is actively seeking to expand its capabilities in a manner that would enable pitch-splitting on metal oxide resists ("MOR"). *See* Dkt. No. 7-5 at ¶¶ 6, 8. Geminatio's acid-based diffusion technique is not compatible with MOR. *Id.* at ¶ 8. According to Geminatio, it hired Defendant Hustad in part to assist with the design and development of the chemistry that would allow for pitch-splitting on MOR. *Id.* at ¶ 15. At some point after Defendant Hustad joined Geminatio, Geminatio allegedly directed Defendant Hustad to examine the potential use of polymer brush technology to accomplish pitch-splitting on MOR. *Id.* at ¶¶ 14-15. Defendant Hustad had previous experience working with polymer brush technology while employed by Dow Global Technologies ("Dow"), *id.*, and Defendants state that

Hustad is a named inventor on at least forty-nine issued patents and/or published patent applications relating to polymer brush technology, *see* Dkt. No. 20 at 11.[2]

Plaintiff alleges that personnel at Geminatio had initial conversations, both internally and with potential customers, regarding the use of polymer brush technology in the MOR pitch-splitting process prior to Defendant Hustad's resignation. For example, in late 2023, a potential customer, Western Digital Technologies, Inc. ("Western Digital"), inquired as to whether Geminatio could assist it in creating distinct features on certain materials. Plaintiff alleges that Dr. Hustad had conversations with Western Digital about the potential use of polymer brush technology to create the features it sought and prepared a slide deck concerning proposed solutions for Western Digital. *See* Dkt. No. 1 at ¶¶ 31-33. Plaintiff also alleges that, in April 2024, Defendant Hustad prepared a slide deck for a potential joint development partner that "provided a roadmap of how Geminatio intended to develop and apply novel and proprietary improvements to polymer brush technology" in a way that would benefit the semiconductor industry. *Id*. at ¶ 34. However, the Parties agree that Hustad "did not take any strides to further develop and reduce to practice the polymer brush technology and chemistry" prior to his resignation. *Id.* at ¶ 35. Plaintiff alleges that Hustad instead formed VioNano, where he continues to research and develop the application of polymer brush technology to "substrate features and brush patterning." Dkt. No. 26-1 at ¶ 23. Since leaving Geminatio, Defendant Hustad has filed additional patent applications, certain of which relate to the advancement of polymer brush technology in the pitch-splitting context.[3]

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[3] At the Court's request, Defendants submitted for *in camera* review all patent applications filed by Defendant Hustad from September 1, 2024 through the present. *See* Dkt. Nos. 30, 34.

**C.  The Proprietary Information and Inventions Agreement**

As a condition precedent to Defendant Hustad's employment with Geminatio, he was required to sign a Proprietary Information and Inventions Agreement ("PIIA").  Dkt. No. 1 at ¶ 23. Pursuant to the PIIA, Defendant Hustad agreed to, *inter alia*, "hold in confidence and not disclose or . . . use any Proprietary Information for the term of [his] employment plus 5 years from termination."  Dkt. No. 1-2 at ¶ 4.  "Proprietary Information," as defined in the PIIA, includes "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I [Hustad] develop, learn or obtain during the term of my employment that relate to [Geminatio] or the business or demonstrably anticipated business of [Geminatio] or that are received by or for Company in confidence."  *Id.*  Disputes concerning the PIIA are governed by Minnesota law.  *Id.* at ¶ 10.

**D.  The Instant Dispute**

Plaintiff alleges that Defendant Hustad misappropriated Geminatio proprietary and trade secret information concerning polymer brush technology and in doing so violated the PIIA, as well as federal and state law.  According to Plaintiff, in July 2024, Defendant Hustad began "planning a competitive venture that would make use of the exact technology and chemistry that Dr. Hustad had suggested to Geminatio and [that] Geminatio had been imploring Dr. Hustad to develop and market."  Dkt. No. 1 at ¶ 36.  When Defendant Hustad informed Geminatio that he would be resigning to pursue his own business venture in September 2024, Geminatio contends that Hustad stated that the new venture would relate only to producing bio-safe chemicals for use in semiconductor manufacturing, which would not be competitive with Geminatio.  *Id.* at ¶ 37. However, Geminatio asserts that Hustad's characterization of his new business venture was false, and that Defendant VioNano's business is directly competitive with Geminatio based in part on

proprietary or trade secret information that Defendant Hustad obtained while employed at Geminatio. *Id.* at ¶ 44.

Specifically, on January 9, 2025, Geminatio's Chief Executive Officer, Robert Maire, met virtually with Defendant Hustad's business partner, George Barclay, to discuss the nature of Defendant VioNano's business and seek Mr. Maire's support of VioNano. *Id.* at ¶ 42. Dr. Barclay presented Mr. Maire with a slide deck depicting VioNano's efforts to research and develop potential applications of polymer brush technology in semiconductor manufacturing. *Id.* at ¶ 43. According to Plaintiff, certain of the VioNano presentation slides "contained images nearly identical" to those images created by Defendant Hustad in early 2024 for use in the presentation that Geminatio had planned to give to Western Digital pertaining to the same technology. *Id.* Dr. Barclay also informed Mr. Maire that Defendant Hustad had recently filed patent applications related to the polymer brush technology advancements, and that Defendant Hustad allegedly wanted to conceal from Mr. Maire the nature of VioNano's business. *Id.* Based upon the information gleaned from this videoconference, Plaintiff claims that Defendant Hustad breached the PIIA and violated federal and state law by (1) disseminating information he developed, learned or obtained during the term of his employment with Geminatio, as evidenced by the similarities between the Geminatio and VioNano presentations; and (2) filing patent applications asserting ownership over technology and/or inventions that were conceived while Hustad was Geminatio's C.T.O. *Id.* at ¶ 49.

On January 17, 2025, counsel for Plaintiff reached out to Defendant Hustad, informing him of Plaintiff's belief that Hustad was in "breach of [his] contractual, common law, and statutory obligations to" Geminatio by misappropriating "confidential and proprietary intellectual property and trade secrets of the Company to compete with the Company, more specifically, information

regarding the use of unique, specially designed chemistries and related processes to improve lithographic patterning and reduce the cost of the semiconductor manufacturing process, including customer information, marketing, financial information and analysis" and requested that, *inter alia*, Defendant Hustad cease and desist from utilizing such information or from engaging in activity that competes with Geminatio to the extent such activity was based on services rendered while at Geminatio. Dkt. No. 7-1. In response, on February 2, 2025, counsel for Defendants informed Geminatio that Defendant Hustad had "at all times, and will continue, not to use or disclose any information of Geminatio that constitutes trade secrets" and that Hustad's work at VioNano was not based on information gleaned while at Geminatio, but on the technology he previously developed while at Dow, his academic training and general knowledge, as well as other in-licensed third-party intellectual property. Dkt. No. 7-2. Over one month later, on March 7, 2025, counsel for Geminatio again accused Defendant Hustad of violating the PIIA by misappropriating Geminatio trade secrets, this time by disclosing alleged Geminatio proprietary information through the recent filing of patent applications. *See* Dkt. No. 7-3. In the letter, Geminatio demanded that Defendant Hustad assign any pending patent applications pertaining to polymer brush technology to Geminatio. *See id.* In response, on March 12, 2025, defense counsel stated that Defendant Hustad had not applied for patents containing or utilizing information that could be considered proprietary under the PIIA, and thus Defendant Hustad would not assign any pending applications to Geminatio. *See* Dkt. No. 7-4. This lawsuit followed approximately two weeks later, on March 21, 2025.

### E. The Motion

In addition to the damages requested in the Complaint, Plaintiff seeks a preliminary injunction (1) preventing Defendant Hustad from further breaching the PIIA; (2) preventing

Defendants from "(a) using and/or disclosing in any manner the applications of polymer brush technology, chemistry, and all related intellectual property developed or reasonably anticipated to be developed at Geminatio and (b) using and/or disclosing any information concerning the business and/or demonstrably anticipated business of Geminatio that defendant Philip Hustad learned of while employed by Plaintiff, including without limitation any alleged Geminatio's trade secrets and/or proprietary and/or confidential information"; and (3) directing the United States Patent and Trademark Office ("USPTO") to suspend immediately all prosecution and publication of Defendant Hustad's patent applications using or derived from Geminatio's trade secrets and confidential information. Dkt. No. 7-7 at 1-2. Plaintiff claims that, absent the issuance of a preliminary injunction, Geminatio's trade secrets may be imminently disseminated based on the issuance of Defendant Hustad's pending patent applications, "frustrating Geminatio's competitive edge and revealing Geminatio's plans to develop its business to the marketplace, as well as the technology underlying the development." Dkt. No. 7-6 at 15. Plaintiff also claims that Hustad's patent applications "preclude Geminatio from exploiting and developing the [polymer brush] technology altogether," and that Defendants' "use of Geminatio's proprietary information and attempts to market products, services, or technology based on Geminatio's misappropriated trade secrets threaten additional disclosure of Geminatio's trade secrets as well as marketplace confusion as to who is the rightful owner of the trade secrets." *Id.* Moreover, Plaintiff contends that a monetary award alone would be insufficient to remedy any alleged harm, claiming that the potential losses to Geminatio are incalculable and that Defendants likely do not have financial means sufficient to satisfy whatever money judgment would be levied against them. *Id.* at 15-16.

Plaintiff also seeks an order entitling it to expedited discovery from Defendant Hustad's and non-party George Barclay's personal devices and from Defendant VioNano, related to, *inter*

*alia*, Geminatio, polymer brush technology being used by VioNano, and correspondence related to Defendants' patent applications, as well as depositions of Defendant Hustad and Dr. Barclay. *Id.* at 2. Plaintiff asserts that this expedited discovery "will reveal information further supporting its broader application for preliminary injunctive relief," that there is no undue burden on Defendants because the discovery sought is targeted, and that "the request is being made no earlier than necessary for use at the preliminary injunction hearing." *Id.* at 25-26.

## III.    STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). Further, a preliminary injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). In any event, preliminary relief should be "narrowly tailored to fit specific legal violations . . . [and] should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir. 1994); *see also Bhd. of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960) ("it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all whose interests the injunction may affect."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2947, at 123-24 (3d ed. 2024) ("Implicit

in the court's discretion under Rule 65(a) is that the court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case or may enter conditional preliminary relief.").

A party seeking preliminary injunctive relief must establish: "(1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff[s]'[] favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and citation omitted.  While a "[p]rohibitory injunction[] [that] maintain[s] the status quo pending resolution of the case" requires an applicant to show "a likelihood of success on the merits," *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018), a "mandatory injunction" that "alter[s] the status quo by commanding some positive act," requires an applicant to show "a clear or substantial likelihood of success on the merits" rather than simply a likelihood of success on the merits.  *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  "When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-pleaded allegations in Plaintiff['s] complaint."  *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020).

## IV.    DISCUSSION

The Court finds, after ample review of the Complaint, Plaintiff's Motion, and subsequent submissions, as well as after hearing from the Parties on April 9, 2025, that Plaintiff has not met its burden to establish that a preliminary injunction or expedited discovery is warranted.

**A.  Plaintiff's Request for a Preliminary Injunction**

The likelihood of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).  There are two essential components to irreparable harm.  First, "[i]t is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent[.]" *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quotation omitted).  Second, irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  The movant bears the burden of proof and persuasion to show that it is entitled to a preliminary injunction because irreparable harm is likely.  *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31, 34 (2d Cir. 2015) ("the 'burden of proof and persuasion rests squarely' on the party moving for a preliminary injunction to show that irreparable harm is likely") (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  To satisfy that burden, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).  "[A] finding of irreparable harm cannot be based solely upon past conduct."  *See Haden v. Hellinger*, No. 9:14-CV-0318, 2016 WL 589703, at *1 (N.D.N.Y. Feb. 11, 2016).

In the trade secret context, "[a] rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of

those secrets." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). This presumption does not apply, however, where the misappropriator has "the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge." *Id.* at 119 ("where there is no danger that a misappropriator will disseminate proprietary information, 'the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product . . . [which] should be fully compensable by money damages.'") (quoting *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F. Supp. 955, 966 (S.D.N.Y. 1996)). Minnesota courts similarly recognize an inference of irreparable harm where there is a threat that trade secrets will be disclosed to a wider audience. *See, e.g.*, *D.L. Ricci Corp. v. Forsman*, Nos. C8-97-1597, C8-97-1969, 1998 WL 202595, at *4 (Minn. App. Ct. Apr. 28, 1998) (citing *Menter Co. v. Brock*, 147 Minn. 407, 410 (Minn. 1920)).

Here, Plaintiff contends that it will suffer irreparable injury in the absence of preliminary injunctive relief because (i) there is risk that Defendant Hustad's patent applications will be published imminently, "frustrating Geminatio's competitive edge and revealing Geminatio's plans to develop its business to the marketplace, as well as the technology underlying that development," Dkt. No. 7-6 at 15; (ii) Defendants' marketing of their products, services, or technology threatens additional disclosure of Plaintiff's trade secrets; and (iii) Defendants would be unable to satisfy a money judgment. *See id.* at 15-16. In response, Defendants assert that (i) Plaintiff has failed to establish which, if any, patent applications contain Geminatio trade secrets, and has not identified any specific attempt by Defendants to market products or technology based on Geminatio trade secrets; (ii) Defendant Hustad attests that he has not filed patent applications that contain Geminatio trade secrets and that Defendants have not marketed products or technology based on

Geminatio trade secrets; and (iii) the allegation that Defendants would be unable to satisfy a money judgment is speculative.  *See* Dkt. No. 20 at 16-17.

First, with respect to Plaintiff's allegations that dissemination of Geminatio trade secrets will occur through Defendant Hustad's pending patent applications, as previously noted, the Court has analyzed *in camera* all patent applications filed by Defendant Hustad from the date he resigned from Geminatio through the present.  From that review, the Court has determined that those patent applications pertaining in any way to the advancement of polymer brush technology are provisional, meaning that they will not be publicly disclosed and will be abandoned unless a nonprovisional application is later filed that claims the benefit of the filing date of one of the provisional applications or if one of the provisional applications is converted into a nonprovisional application within twelve months of the provisional application's filing date.  *See* 35 U.S.C. § 122(b)(2); *see also* 37 C.F.R. § 1.211(b); *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 644 (E.D. Tex. 2009) (citing 35 U.S.C. § 122; 37 C.F.R. § 1.211; and Manual of Patent Examining Procedure § 1120)) ("The [] provisional application, like all provisional applications, was neither published nor made publicly available by the [USPTO]").  While it is certainly possible that Defendant Hustad will ultimately make such a nonprovisional application, there is no evidence of his intent to do so and therefore Plaintiff's contention that its proprietary information will soon be disclosed via these applications is either misplaced or speculative.  Moreover, even if Defendant Hustad does make the requisite nonprovisional application, the filing dates on the provisional applications pertaining to enhanced polymer brush technology do not support the contention that any potential harm is imminent.  At the April 9, 2025 hearing, counsel for Plaintiff indicated that the publishing of patent applications takes place anywhere from one year to eighteen months after the filing of the application.  Section 122 similarly states that patent applications are typically

published "after the expiration of a period of 18 months from the earliest filing date." 35 U.S.C. § 122(b)(1)(A).[4]  Using Plaintiff's estimate, and again assuming Defendant Hustad files one or more nonprovisional applications, it appears from the Court's *in camera* review that any potential disclosure of Plaintiff's alleged trade secrets would not occur until, at the earliest, approximately another six months to a year.  The Court hardly views this alleged harm as "imminent."  *See, e.g.*, *Rell v. Rumsfeld*, 389 F. Supp. 2d 395, 399 (D. Conn. 2005) (no irreparable harm where alleged injury would "occur, if at all, many months from now").  Indeed, should Defendant Hustad file one or more nonprovisional applications, Plaintiff may file a protest prior to the applications being published.  *See* 37 C.F.R. § 1.291 (mechanism for a patent protest prior to the date that a pending application is published).  Plaintiff has not made a showing that the avenues available to it at the USPTO are insufficient and the Court will not encourage litigants to eschew USPTO processes in favor of seeking preliminary injunctive relief, particularly where, like here, any likelihood of harm is speculative and/or remote.  *See, e.g.*, *Harrison v. Local One, Int'l Union of Elevator Constructors of N.Y. & N.J., AFL-CIO*, No. 24-CV-8619, 2025 WL 1013391, at *9-10 (E.D.N.Y. Apr. 5, 2025) (finding no likelihood of irreparable harm where alleged injuries were "hypothetical" and noting "that speculative fear of injury falls far below what is required for the Court to enjoin Defendants.").

Next, regarding Plaintiff's allegations that Defendants are disseminating Geminatio trade secrets as part of their marketing efforts, the Court agrees with Defendants that Plaintiff has not proffered any evidence that Defendants are marketing a product at all, let alone marketing a

---

[4] A nonprovisional patent application can claim priority to a provisional patent application's filing date and, therefore, gain the benefit of that earlier date, if the requirements set forth in 35 U.S.C. § 119(e)(1) are satisfied.  *See In re Giacomini*, 612 F.3d 1380, 1383 (Fed. Cir. 2010) ("Section 119(e) treats a nonprovisional application as though filed on the date of its corresponding provisional application.").

product in a way that discloses Geminatio's proprietary or trade secret information. While Plaintiff asserts that, during the January 2025 videoconference, "[D]r. Barclay confirmed that VioNano . . . is currently engaging with customers and investors," Dkt. No. 7-5 at ¶ 29, Plaintiff does not proffer with any specificity the nature of VioNano's alleged engagement, including, for example, which potential customers VioNano has approached,[5] when these communications have taken place, or, most notably, what product VioNano has been marketing. Moreover, the Court's review of the January 2025 videoconference indicates that while Dr. Barclay described VioNano's ongoing efforts to secure funding, he explicitly stated that VioNano is not yet in a position to establish concrete relationships with customers and that it is instead looking to develop the technology through university partnerships before "engaging with customers later on." Dkt. No. 25, Ex. A at 24:55. Plaintiff offers nothing else to support its contention that Defendants are disseminating Plaintiff's trade secret or proprietary information to potential customers.[6] As such, Plaintiff has not sufficiently established that Defendants' alleged marketing efforts are likely to

---

[5] While Mr. Maire attests that Dr. Barclay indicated that a potential customer expressed interest in the technology, review of the January 2025 videoconference shows that Dr. Barclay relayed only that the potential customer was generally interested in a "polymer brush approach" to pitch-splitting, and no further detail regarding VioNano's presentation or the interest in the technology was relayed. Dkt. No. 25, Ex. A at 27:30. Mr. Maire's secondary allegation that VioNano was soliciting customers at the 2025 International Society for Optics and Photonics ("SPIE") Advanced Lithography and Patterning conference is similarly vague and seemingly speculative, as Mr. Maire only contends that Defendants were "*apparently* advertising and promoting VioNano's capabilities and forthcoming technology to SPIE attendees." Dkt. No. 25-1 at ¶ 9 (emphasis added).

[6] Even though Plaintiff argues that the alleged similarities between the April 2024 Geminatio slide deck and the January 2025 VioNano slide deck evidence that VioNano is using Geminatio's proprietary or trade secret information to market technology to customers, *see, e.g.*, Dkt. No. 25-1 at ¶ 15, Plaintiff has not sufficiently alleged or established that Defendants ever shared the January 2025 slide deck with anyone other than Mr. Maire and, moreover, Plaintiff has not sufficiently alleged or established that the slide deck includes proprietary or trade secret information, as opposed to already public information concerning polymer brush technology and its potential applications in semiconductor manufacturing. Indeed, VioNano would have a strong incentive to keep any such proprietary or trade secret information, regardless of its rightful ownership, confidential. *See Faiveley Transp. Malmo AB*, 559 F.3d at 119.

cause it irreparable harm. *See Utica Mut. Ins. Co. v. INA Reinsurance Co.*, No. 6:12-CV-194, 2012 WL 12874471, at *5 (N.D.N.Y. Nov. 6, 2012) ("The party seeking injunctive relief bears the burden of proving that it is entitled to such relief, and *must do so with evidence*, and may not rely on vague claims of potential harm.") (citations and quotations omitted) (emphasis added).

Therefore, even assuming for purposes of this Memorandum-Decision and Order that Defendants are in possession of Geminatio trade secrets, the Court cannot conclude that such trade secrets are at risk of being imminently disseminated to a wider audience and thus Plaintiff is not entitled to a presumption of irreparable harm as outlined in *Faiveley*. "[T]he vague risk that [Defendants] *could* disseminate the information if [they] wish[] does not satisfy [Plaintiff's] burden" for a preliminary injunction in a trade secrets case. *Apotheco Pharm. Durham, LLC v. Ahmed*, No. 24-CV-3619, 2024 WL 2925212, at *5 (S.D.N.Y. June 10, 2024) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)) (emphasis in original).[7]

Moreover, with respect to this or any other potential harm not otherwise discussed, Plaintiff has not sufficiently shown that money damages would be an insufficient remedy. *See Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."). For example, if Plaintiff is ultimately able to prove that Defendants misappropriated Geminatio trade secrets to solicit a potential customer base, then

---

[7] To the extent that Plaintiff alleges irreparable harm based on Defendant Hustad's disclosure of Geminatio trade secrets to VioNano, such alleged harm has already occurred, as evidenced by the January 2025 videoconference, and thus such harm would not be cured by the issuance of a preliminary injunction. *See Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) ("the question is not whether the plaintiff has suffered irreparable harm, but whether it will be irreparably harmed in the absence of an injunction. In other words, *the injunction must prevent or remedy the harm*.") (emphasis added). "The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already has occurred." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (emphasis in original).

Defendants may owe Plaintiff reasonably calculated money damages for the business Plaintiff lost from those specific customers. *See, e.g.*, *Apotheco Pharm. Durham LLC*, 2025 WL 292512 at \*5. Additionally, to the extent that Plaintiff ultimately establishes that Geminatio trade secrets were used by Defendant Hustad to file provisional patent applications, any harm incurred by the issuance of subsequent patents to Dr. Hustad can be cured through the assignment process and by demanding from Defendants the payment of any revenue that they obtained prior to the assignment. *See, e.g.*, *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996) (affirming district court award for both lost profits and a reasonable royalty for sales that occurred prior to the date of assignment upon a finding that the plaintiff's competitor in the fused silica market infringed the patented process). And with respect to Plaintiff's allegations that Defendants will be unable to satisfy this money judgment, the Court agrees with Defendants that such allegations are speculative. While courts recognize that injunctive relief can be issued in lieu of money damages where "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied," *Brenntag Intern. Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999), Plaintiff has not presented the Court with any evidence regarding Defendants' financial position, including any information regarding Defendants' current assets and liabilities, such that the Court could find that Defendants are "imminently in danger of insolvency," *Gen. Transp. Servs., Inc. v. Kemper Ins. Co.*, No. 5:03-CV-620, 2003 WL 21703635, at \*3 (N.D.N.Y. June 25, 2003) (citing, *inter alia*, *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("the party moving for injunctive relief cannot rely upon "conclusory assertions of a defendant['s] financial weakness to demonstrate a likelihood of such harm.") (internal quotations omitted)).

Finally, the Court finds that Plaintiff's delay in filing the current action further undermines Plaintiff's contentions with respect to a likelihood of irreparable harm.  Injunctive relief is "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).  Consequently, "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Id.* (citation omitted).  Courts have found that "delays of as little as ten weeks [are] sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (citing *Citibank, N.A.*, 756 F.2d at 276-77); *see also Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21-cv-38, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (noting that, while "[t]here is no bright-line rule for how much delay is too much, . . . courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").  Here, Plaintiff claims to have learned about Defendants' alleged misappropriation during the videoconference with Dr. Barclay, which occurred on January 9, 2025.  *See* Dkt. No. 7-6 at 12-13.  It was not until over two months later that Plaintiff filed the instant lawsuit and Motion.  In addition, prior to filing suit, Plaintiff also delayed in responding to initial correspondence it received from defense counsel.  Specifically, after defense counsel responded to Plaintiff's initial letter accusing Defendant Hustad of misappropriation, Plaintiff waited over a month to write to defense counsel again.  *See* Dkt. Nos. 7-1, 7-2, 7-3, 7-4.[8]

---

[8] The Court also notes that the theory upon which Plaintiff accused Defendant Hustad of misappropriation changed during the course of the correspondence.  In its initial correspondence in January 2025, Plaintiff only accused Defendant Hustad of attempting to compete with Geminatio using information Hustad gathered while employed by Geminatio.  *See* Dkt. No. 7-1.  Then, in subsequent correspondence in March 2025, Plaintiff accused Defendants of

In sum, Plaintiff has not, on the record currently before the Court, met its burden of demonstrating a likelihood of irreparable harm that is "actual and imminent." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (citing *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)).  There is no concrete evidence from which the Court can conclude that Defendants are likely to disseminate Geminatio trade secrets, to the extent that such trade secrets were misappropriated at all, let alone disseminate such trade secrets in the near future.  Because a "finding of no showing of irreparable harm is dispositive," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007), the Court need not address the remaining factors, including whether Plaintiff is likely to succeed on the merits of its claims, *see, e.g.*, *Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 605 (S.D.N.Y. 1996) (declining to address the likelihood of success on the merits where the plaintiffs failed to demonstrate the probability of irreparable harm in the absence of a preliminary injunction); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.") (first citing *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990), and then citing *Sierra Club v. Hennessy*, 695 F.2d 643, 647 (2d Cir. 1982)).

Therefore, Plaintiff's request for a preliminary injunction is denied.

### B.  Plaintiff's Request for Expedited Discovery

"Courts in the Second Circuit employ two tests for determining the propriety of an expedited discovery request." *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y.

---

misappropriation through the submission of patent applications that allegedly contained Geminatio trade secrets.  *See* Dkt. No. 7-3.  However, the January 2025 videoconference put Plaintiff on notice that Defendant Hustad had been filing patent applications.  *See* Dkt. No. 7-6 at 12.  The failure to take issue with the patent applications in the original correspondence is curious and further undermines Plaintiff's contention that it is entitled to preliminary injunctive relief.

2011).  "The first is a 'reasonableness standard.'"  *Id.* (quoting *KeyBank Nat'l Assoc. v. Quality Pay-Roll Sys., Inc.*, No. 06-CV-3013, 2006 WL 1720461, at *4 (E.D.N.Y. June 22, 2006)).  The second is a four-factor test where the party requesting expedited discovery must show: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted."  *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).  However, "many recent cases reject *Notaro* and apply a more flexible 'good cause' test."  *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (collecting cases).  In that regard, "[c]ourts may find that there is good cause when 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'"  *N. Atlantic Operating Co., Inc. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 367 (E.D.N.Y. 2013) (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

Plaintiff argues that expedited discovery is warranted pursuant to the good cause standard because, *inter alia*, (i) it will reveal information further supporting its request for a preliminary injunction; (ii) the discovery requests are targeted and will not pose an undue burden on Defendants; and (iii) the discovery requests are being made no earlier than necessary for use at a preliminary injunction hearing.  *See* Dkt. No. 7-6 at 25-26.  Plaintiff additionally argues that expedited discovery is warranted under the *Notaro* test because it has established the likelihood of irreparable harm and success on the merits.  *Id.* at 26.

On the latter point, the Court finds that Plaintiff has failed to satisfy the requirements under the *Notaro* test because it has failed to demonstrate the likelihood of irreparable harm for the reasons already set forth above.  Regarding whether Plaintiff has satisfied the good cause test, the

Court notes that many of Plaintiff's arguments pertain to the discovery's potential support of the preliminary injunction motion. Since the Court has already determined that a preliminary injunction is not warranted at this juncture, it finds that Plaintiff's contentions regarding expedited discovery are largely unpersuasive. *See R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 209 (W.D.N.Y. 2020) ("in assessing good cause a court may take into account the standard necessary to establish entitlement to a preliminary injunction, including for instance whether there is some connection between the request for expedited discovery and the avoidance of irreparable injury"). Even if Plaintiff did not tie the expedited discovery request to the disposition of the preliminary injunction motion, however, Plaintiff has still failed to satisfy the good cause standard. Plaintiff has not, for example, "provide[d] reason for the Court to permit [it] to obtain discovery on an expedited basis, rather than in the ordinary course," *Kreit v. Byblos Bank S.A.L.*, No, 22-cv-10751, 2023 WL 3005852, at *1 (S.D.N.Y. Mar. 28, 2023), nor has Plaintiff made a showing that, absent expedited discovery, "documents will be spoliated or otherwise unavailable to Plaintiff," *Klym v. Monroe Cnty. Sup. Ct.*, No. 21-CV-6488, 2023 WL 10354316, at *10 (W.D.N.Y. Dec. 8, 2023).

Therefore, Plaintiff's request for expedited discovery is denied.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Emergency Motion for a Preliminary Injunction and Expedited Discovery, Dkt. No. 7, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 28, 2025
       Albany, New York

Anne M. Nardacci
U.S. District Judge