**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GEMINATIO, INC.,

                    Plaintiff,

v.                                                    1:25-cv-00361 (AMN/TWD)

PHILIP HUSTAD & VIONANO INNOVATIONS, INC.,

                    Defendants.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **HARRIS BEACH MURTHA CULLINA PLLC**<br>677 Broadway – Suite 1101<br>Albany, New York 12207 | **DANIEL R. LECOURS, ESQ.** |
| **HARRIS ST. LAURENT & WECHSLER LLP**<br>40 Wall Street – 53rd Floor<br>New York, New York 10005<br>*Attorneys for Plaintiff* | **DAVID S. WECHSLER, ESQ.**<br>**JUANNELL RILEY, ESQ.** |
| **BOND SCHOENECK & KING, PLLC**<br>One Lincoln Center<br>Syracuse, New York 13202 | **BRIAN J. BUTLER, ESQ.** |
| 350 Linden Oaks – Third Floor<br>Rochester, New York 14625 | **JEFFREY F. ALLEN, ESQ.**<br>**JEREMY M. SHER, ESQ.** |
| Avant Building – Suite 900<br>200 Delaware Avenue<br>Buffalo, New York 14202<br>*Attorneys for Defendants* | **JEREMY P. OCZEK, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

                                  **MEMORANDUM-DECISION & ORDER**

I.  **INTRODUCTION**

On March 21, 2025, Plaintiff Geminatio, Inc. ("Geminatio") filed a complaint pursuant to 18 U.S.C. § 1836, as well as Minnesota and New York state law, against Defendants Dr. Philip Hustad and VioNano Innovations, Inc. ("VioNano"). Dkt. No. 1 ("Complaint"). The Complaint alleges that Defendant Hustad (i) breached a Proprietary Information and Inventions Agreement ("PIIA") he executed while employed at Geminatio; (ii) violated federal and state trade secret protections by allegedly disclosing inventions and intellectual property conceived during Hustad's employment with Geminatio in an effort to compete against Geminatio via Defendant VioNano; (iii) breached his fiduciary duties to Geminatio; and (iv) tortiously interfered with Geminatio's economic advantage. *See id.* at ¶¶ 48-87.

Along with the Complaint, Plaintiff filed an emergency order to show cause, requesting a temporary restraining order, a preliminary injunction, and expedited discovery pursuant to Fed. R. Civ. P. 65(b)(1) and Northern District of New York Local Rules 7.1(e) and 65.1. Dkt. No. 7. On March 24, 2025, the Court denied the portion of the emergency motion seeking an *ex parte* temporary restraining order, and on April 9, 2025, held a hearing regarding the remaining portions of the emergency motion. *See* Dkt. Nos. 8, 23. On April 28, 2025, following the submission of certain documents requested by the Court for *in camera* review, the Court issued a Memorandum-Decision and Order denying the remaining portions of Plaintiff's emergency motion. Dkt. No. 40.

On May 1, 2025, Defendants filed a motion to dismiss the Complaint pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. No. 43 ("Motion"). Plaintiff opposed the Motion on May 22, 2025, *see* Dkt. No. 46, and Defendants filed a reply in further support of the Motion on May 29, 2025. Dkt. No. 47. Plaintiff also filed a cross-motion seeking to amend the Complaint on June 18, 2025, *see* Dkt. No. 53 ("Cross-Motion"), which Defendants opposed on July 8, 2025. Dkt. No. 54. Accordingly, Defendants' Motion and Plaintiff's Cross-Motion are now ripe for adjudication.

For the reasons set forth below, Defendants' Motion is granted, and Plaintiff's Cross-Motion is denied.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motions, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A. The Parties

Plaintiff Geminatio is a manufacturer of advanced chemical solutions with its principal place of business in Schenectady, New York. Dkt. No. 1 at ¶¶ 1, 12. Incorporated in Delaware in January 2021, Geminatio has three full-time employees and a varying number of temporary employees. *Id.* at ¶ 12.

Defendant Hustad is a former employee of Geminatio who currently resides in the state of Minnesota. *Id.* at ¶ 13. Hustad was hired as Geminatio's Chief Technology Officer in January 2022 and resigned in September 2024. *Id.* at ¶¶ 2, 9. Upon his resignation, Defendant Hustad formed Defendant VioNano with non-party George Barclay. *Id.* at ¶ 9. VioNano was incorporated in Delaware in November 2024 and maintains its principal place of business in South Grafton, Massachusetts. *Id.* at ¶ 14.

### B. Plaintiff's Original Complaint

The Court presumes the Parties' familiarity with the facts as alleged in the Complaint, Dkt. No. 1, as set forth in the Court's prior Memorandum-Decision and Order on Plaintiff's motion for a preliminary injunction and expedited discovery. Dkt. No. 40 at 3-7. In summary, Plaintiff alleges that Defendant Hustad misappropriated Geminatio's proprietary and trade secret

3

information concerning polymer brush technology and in doing so violated the PIIA, as well as federal and state law. *See* Dkt. No. 1 at ¶¶ 61-75. According to Plaintiff, Defendant VioNano's business is directly competitive with Geminatio based in part on proprietary or trade secret plans that Defendant Hustad obtained while employed at Geminatio. *Id.* at ¶ 44.

### C. Defendants' Motion to Dismiss

Defendants move to dismiss the Complaint in its entirety on multiple grounds. First, Defendants argue that Plaintiff's Defend Trade Secrets Act ("DTSA") claim and misappropriation claim brought under Minnesota law should be dismissed because (i) Plaintiff fails to identify information that could be subjected to trade secret protection; and (ii) even if Plaintiff could sufficiently allege a trade secret, Plaintiff fails to adequately establish that such trade secret was misappropriated by Defendants. Dkt. No. 43-1 at 9-17, 20. Second, Defendants contend that, since Plaintiff's DTSA claim is the only one brought under federal law, the Court should decline to exercise pendent jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367. *Id.* at 18. In the alternative, Defendants argue that Plaintiff fails to state a claim for breach of contract against Defendants, since the Complaint does not identify a trade secret that was disclosed in violation of the PIIA, and because any efforts by Defendant Hustad to ultimately compete with Plaintiff were merely preparatory and, accordingly, non-actionable. *Id.* at 18-20.

Defendants also contend that Plaintiff fails to state a breach of fiduciary duty claim because it does not plausibly set forth that Defendant Hustad used Plaintiff's purported trade secrets to compete or otherwise harm Plaintiff's business in any manner. *Id.* at 20-21. Finally, Defendants argue that Plaintiff's tortious interference with prospective economic damage claim fails because Plaintiff does not set forth sufficient facts establishing that (i) Defendant Hustad convinced one of Plaintiff's potential customers not to enter into business with Plaintiff; and (ii) in communicating

with Plaintiff's potential customer, Defendant Hustad acted with the sole purpose of harming Plaintiff.  *Id.* at 22-23.

### D. Plaintiff's Proposed Amended Complaint

While Plaintiff argues that Defendants' Motion should be dismissed because the Complaint sets forth facts sufficient for all of its claims to survive, Plaintiff requests in the alternative that it be granted leave to file an amended complaint to replead any purported deficiencies.  *See generally*, Dkt. No. 53-1.  Pursuant to N.D.N.Y. Local Rule 15.1, Plaintiff filed with its Cross-Motion a Proposed Amended Complaint in redline format, comparing the Proposed Amended Complaint to the original Complaint.  Dkt. No. 53-3.

Plaintiff's proposed amendments primarily bolster certain of Plaintiff's factual allegations regarding the purported trade secrets that Defendants allegedly misappropriated.  In summary, the Proposed Amended Complaint contends that Plaintiff developed a "trade secret plan" to improve historical issues with the use of polymer brushes in pitch-splitting, specifically to address defects related to poor pattern transfer and imprecise pitch-splitting.  Dkt. No. 53-3 at ¶¶ 4, 20.  The Proposed Amended Complaint explains that polymer brushes are not yet commercially utilized in pitch-splitting because of these defects, but the proliferation of metal oxide resists and other substrate materials in semiconductor manufacturing, in conjunction with the need for narrower and finer pitch-splitting, has increased market demand for alternative pitch-splitting technologies.  *Id.* at ¶¶ 5, 19.  Plaintiff alleges that it is uniquely positioned to leverage this growing market demand through its industry reputation, customer and investor relationships, and technical knowledge of pitch-splitting.  *Id.* at ¶ 20.

Plaintiff further alleges that Geminatio developed a plan to improve polymer brush technology to increase its competitive advantage based on its "market insight relating to increased use of a wider range of photoresists and substrate materials in semiconductor manufacturing . . .

5

and new approaches to utilizing polymer brush technology" that address specific polymer brush defects, which Plaintiff has kept secret. *Id.* at ¶¶ 75, 82.

In further support of Plaintiff's claim that Defendants misappropriated Plaintiff's purported trade secrets, Plaintiff alleges that Defendant Hustad wiped his computer prior to leaving Geminatio, *id.* at ¶ 40, and failed to return certain "investor and/or engineer's" notebooks, which purportedly contained the work he performed for Plaintiff pertaining to polymer brushes. *Id.* at ¶ 41. Plaintiff further alleges that Defendant Hustad filed "a whole bunch of new patents" related to the process of using polymer brush technology in pitch-splitting, covering the same work Hustad performed at Geminatio. *Id.* at ¶ 46. Additionally, Plaintiff alleges that Defendant Hustad took and used Geminatio's materials for purposes outside of Geminatio, contending that VioNano's business plans overlap and conflict with Geminatio's own trade secret plans relating to polymer brushes, which is evidenced by a slide presented by Defendant Hustad's partner at VioNano that is "strikingly similar" to slides used in decks Defendant Hustad prepared for Geminatio. *Id.* at ¶ 48.

Plaintiff also proposes revisions to its state law claims to (i) add a fourth breach of contract claim against Defendant Hustad related to his work improving polymer brush technology while at VioNano, which he conceived of while at Geminatio, in purported breach of the PIIA, *see id.* at ¶¶ 66-71; (ii) drop its tortious interference claim; and (iii) clarify that Plaintiff brings its breach of fiduciary duty claim under the faithless servant doctrine. *See id.* at ¶¶ 90-97.

III.   **STANDARD OF REVIEW**

    A. **Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint

and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (internal quotation marks omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

### B. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides in relevant part: "a party may amend its pleading once as a matter of course no later than 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). After 21 days, "a party may amend its pleading only with the opposing party's

7

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  When a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Rule 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  When assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6).  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss").

## IV.     DISCUSSION

Since the standards for analyzing both Defendants' Motion and Plaintiff's Cross-Motion are largely the same, for the sake of efficiency, the Court will assess the plausibility of all of Plaintiff's claims as set forth in both the original Complaint and the Proposed Amended Complaint. *See Milanese*, 244 F.3d at 110.

### A.     Defendants' Motion to Dismiss

#### i.     Trade Secret Misappropriation Claim

"The DTSA provides a private cause of action to the 'owner of a trade secret that is misappropriated.'"  *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 18-cv-546, 2020 WL 352614, at *11 (N.D.N.Y. Jan. 21, 2020) (quoting 18 U.S.C. § 1836(b)(1)).  "To state a claim for trade secret misappropriation under the DTSA, 'a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret.'"  *TRB Acquisitions LLC v. Yedid*, No. 20-cv-552, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (quoting *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019)).  "Trade secrets," as defined by the DTSA, include all forms and types of financial, business,

8

scientific, economic, or engineering information that (i) "the owner has taken reasonable measures to keep secret" and (ii) "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* (quoting 18 U.S.C. § 1839(3)).

To survive a motion to dismiss, Plaintiff must "'plead factual content that allows the Court to draw the reasonable inference' that [Plaintiff] possessed a trade secret." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal brackets omitted). While there is no heightened pleading requirement for actions brought under the DTSA, *see Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-cv-5966, 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017) (citation omitted), as a threshold matter, a claimant "bears the burden of identifying a purported trade secret with sufficient specificity." *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 800-01 (2d Cir. 2023) (citations omitted). The pleading standard "requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-cv-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) (citation omitted). "Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." *Sapir v. Rosen*, No. 20-cv-6191, 2021 WL 4482277, at *5 (S.D.N.Y. Sept. 30, 2021) (quoting *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-cv-5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018)). Describing the alleged trade secret with adequate specificity informs the defendant of what it allegedly misappropriated and enables a factfinder to "determine whether certain information is, in fact, a trade secret." *Syntel*, 68 F.4th at 801 (citations omitted); *see also id.* at *7 ("This

requirement exists both so that defendants are put on notice of what items they allegedly misappropriated and so that a court can ascertain the protectability of the information at issue."). "Such information is necessary to distinguish trade secrets from merely confidential business information." *Rodney v. United Masters*, No. 21-cv-5872, 2023 WL 2184865, at *3 (E.D.N.Y. Feb. 10, 2023).

Defendants contend that Plaintiff has failed to identify any purported trade secret with sufficient specificity. Dkt. No. 43-1 at 11-14. While courts in the Second Circuit do not expressly require the identification of trade secrets with any particular degree of specificity, vague and indefinite descriptions of information cannot be protected as trade secrets. *See Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258-59 (S.D.N.Y. 2014); *see also Intrepid*, 2020 WL 7774478, at *4 (concluding that "general and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function") (citation omitted). Plaintiff describes its "plan to improve the polymer brush technology" that it believes to be a trade secret as:

> its market insight relating to [i] increased use of a wider range of photoresist and substrate materials in semiconductor manufacturing, [ii] increased demand for pitch-splitting processes compatible with a wider range of photoresist and substrate materials, and [iii] new approaches to utilizing polymer brush technology which address high instances of defectivity—such as poor pattern transfer and imprecise pitch splitting—and enable refinement of existing microscopic features.

Dkt. No. 53-3 at ¶ 82. "[S]uch overarching descriptions do not constitute 'specific allegations as to the information owned and its value.'" *Rodney*, 2023 WL 2184865, at *4 (quoting *Elsevier*, 2018 WL 557906, at *4 (dismissing DTSA claim where plaintiff "[a]lleg[ed] the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue" (internal quotation marks and citation omitted))).

The Court concludes that Plaintiff fails to plausibly allege a trade secret. While Plaintiff may have a plan to improve polymer brush technology, Plaintiff fails to articulate the nature of the proposed improvements to the technology or any process or technique to develop or execute its plan to improve the technology with sufficient specificity to enable the Court to assess the protectability of this information and put Defendants on notice of the claim. *See Big Vision*, 1 F. Supp. 3d at 265-66, 265 n.50.[1]

Plaintiff's Proposed Amended Complaint describes nothing more than a general plan to improve the polymer brush technology. *See, e.g.*, *TRB Acquisitions*, 2021 WL 293122, at *2 (holding that plaintiff's description of its trade secret as a "core brand and marketing plan strategy which include[ed] plans to create and discontinue licensed product lines, and strategies and plans for competing in certain trade channels, product categories and markets, including which types of consumers to target, which retail and other channels to enter and at which price points, and ultimately which licensees to partner with" were "far too general to state a DTSA claim" (internal quotation marks and citation omitted)); *see also Rodney*, 2023 WL 2184865, at *1, 4 (finding that plaintiff's "overarching descriptions" of a "plan" as the creation of a "community for music creators and professionals, with support material, development, and a distribution pipeline" were not specific enough to constitute a trade secret). Plaintiff's Proposed Amended Complaint fails to articulate the particulars of the process to improve polymer brush technology that it alleges that it is "uniquely situated to employ." Dkt. No. 53-3 at ¶ 20; *see also Elsevier*, 2018 WL 557906, at

---

[1] Plaintiff concedes that it does not assert a trade secret based on the lapsed patent application referenced in the Complaint, *see* Dkt. No. 46 at 5 n.1, clarifying in its Proposed Amended Complaint that the original patent application filed by Defendant Hustad related to the basic chemistry of using polymer brushes in pitch-splitting and does not contain the trade secrets at issue in this litigation. Dkt. No. 53-3 at ¶ 26.

11

\*6 (dismissing DTSA claim where plaintiff failed to "elucidate how th[e] methods, processes, and interpretations" alleged to be trade secrets "function" (internal quotation marks omitted)).

Furthermore, Plaintiff's reliance on the Third Circuit's decision in *Oakwood Labs* and the Southern District's decision in *Medtech Products* is misplaced. In *Oakwood Labs*, the plaintiff alleged detailed descriptions with the requisite specificity to enable the Court to identify the contours of its trade secret: "information laying out its design, research and development, test methods and results, manufacturing processes, quality assurance, marketing strategies, and regulatory compliance related to its development of a microsphere system for drug delivery, including peptide-based drugs." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 907 (3d Cir. 2021). Moreover, "[m]uch of that information was contained in . . . a 27-page memorandum explaining the leuprolide products involved in the Microsphere Project," and included, among other things, "the specific ingredients of the formula used to develop the Leuprolide Products, Oakwood's strategic plan to obtain regulatory approval of the Leuprolide Products, the results of its clinical trials of the Leuprolide Products and alterations Oakwood made to the formula following its analysis of the clinical trial results." *Id.* at 897 (internal brackets, ellipses, and quotation marks omitted). Likewise, in *Medtech Products*, the plaintiff alleged "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors," which the Court found was specific enough to identify the existence of trade secrets. *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008). The instant case is dissimilar. Unlike in *Oakwood* and *Medtech Products*, Plaintiff in this case fails to identify "a single document, piece of data, or technology" that describes its plan to improve polymer brush technology, Dkt. No. 43-1 at 13, and Plaintiff admitted to this Court that it did not reduce its purported plan to writing. *See* Dkt. No. 42 at 40:11-17; *cf. Zabit v. Brandometry, LLC*,

540 F. Supp. 3d 412, 423 (S.D.N.Y. 2021) (finding that plaintiffs had sufficiently alleged a trade secret because they "tie[d] the broad categories of information to the specific algorithm(s) underlying" their stock market index).

Accordingly, the Court finds that the Proposed Amended Complaint fails to satisfy this first element.

\* \* \*

For the above reasons, the Court finds that Plaintiff's allegations are insufficient to plausibly allege a trade secret.[2]  Accordingly, the Court finds that Plaintiff has failed to establish the threshold requirement for a DTSA claim against Defendant, and thus, Plaintiff's DTSA claim is dismissed without prejudice.

    ii.    **State Law Claims**

In addition to its DTSA claim, Plaintiff's Proposed Amended Complaint asserts state law claims for breach of contract and breach of fiduciary duty under New York law, and misappropriation of trade secrets under Minnesota law.  Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Dkt. No. 43-1 at 18.  Even where state law claims form part of the "same case or controversy," courts can decline to exercise supplemental jurisdiction over the claims pursuant to section 1367(c), if, among other reasons, the state law claims "substantially predominat[e] over the claim . . . over which the district court has original jurisdiction [or] the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see also Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).  The Second Circuit has also indicated that, as a general rule, district courts "should decline the exercise of

---

[2] Given that the Court dismisses the DTSA claim on this ground, it does not reach the parties' arguments concerning the sufficiency of Plaintiff's allegations concerning misappropriation.

13

supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). Here, Plaintiff's federal and state claims form part of the same case or controversy, as they all stem from Defendant Hustad's alleged misappropriation of "trade secrets" upon resigning from Geminatio, and the Court has dismissed Plaintiff's only federal claim.

However, before declining to exercise supplemental jurisdiction, "the Court must also consider whether values of judicial economy, convenience, fairness, and comity would be disserved by such a decision." *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18-cv-7998, 2019 WL 4688711, at *5 (S.D.N.Y. Sept. 26, 2019); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Here, Plaintiff contends that judicial economy weighs in favor of exercising supplemental jurisdiction because the Court has issued multiple orders and is familiar with the underlying facts and allegations. Dkt. No. 46 at 19. However, this case is in its early stages and discovery has not yet begun, so any concerns about judicial economy, convenience, and fairness are limited. *See 24 Seven, LLC v. Martinez*, No. 19-cv-7320, 2021 WL 276654, at *10 (S.D.N.Y. Jan. 26, 2021). Moreover, "[a]llowing Plaintiff to pursue its state law claims in state court would 'avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice.'" *Principia Partners*, 2019 WL 4688711, at *6 (quoting *Moran v. Tryax Realty Mgmt, Inc.*, No. 15-cv-8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016)). Accordingly, the balance of factors counsels in favor of declining to exercise supplemental jurisdiction. *See, e.g., Zabit*, 540 F. Supp. 3d at 428 (declining to exercise jurisdiction over state law claims when plaintiff failed to plead a "trade secret" under the DTSA); *Negative, Inc. v. McNamara*, 770 F. Supp. 3d 472, 482 (E.D.N.Y. 2025) (same); *TRB Acquisitions*, 2021 WL 293122, at *2 (same).

For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice to re-filing in state court.[3]

### B. Plaintiff's Cross-Motion for Leave to Amend

Having now assessed the plausibility of all claims pled in Plaintiff's Complaint and Proposed Amended Complaint, the Court addresses whether Plaintiff's request for leave to amend the Complaint would be futile. A proposed amendment is considered futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Brill v. Ulster Cnty.*, 799 F. Supp. 3d 73, 88 (N.D.N.Y. 2025) (quoting *Jones v. New York State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 55 (2d Cir. 1999)). "[I]f a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned." *Castro v. Heath*, No. 12-cv-1250, 2013 WL 5354241, at *13 (N.D.N.Y. Sept. 23, 2013) (citation omitted). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (collecting cases).

As set forth above, Plaintiff's Proposed Amended Complaint does not cure the pleading deficiencies with respect to the DTSA claim. Accordingly, the Proposed Amended Complaint

---

[3] On July 8, 2025, Defendants requested oral argument on the Motion and Cross-Motion. Dkt. No. 55. Plaintiff responded on July 14, 2025, requesting that oral argument be conducted remotely, if the Court granted the request for oral argument, or, in the alternative, leave to reply to Defendants' opposition to the Cross-Motion if oral argument is not granted. Dkt. No. 56. The Court, in its discretion, denies Defendants' request for oral argument as well as Plaintiff's request for leave to reply because it finds that neither is necessary to rule on the pending motions. *See Palladino v. JPMorgan Chase & Co.*, No. 23-cv-1215, 2025 WL 1371786, at *4 n.5 (E.D.N.Y. May 12, 2025) (collecting cases).

cannot survive a motion to dismiss. For these reasons, the Court denies Plaintiff's Cross-Motion for leave to amend as futile.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 43, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion to amend, Dkt. No. 53, is **DENIED**; and the Court further

**ORDERS** that Defendants' request for oral argument, Dkt. No. 55, is **DENIED**; and the Court further

**ORDERS** that Plaintiff's request for leave to reply to Defendants' opposition to the Cross-Motion, Dkt. No. 56, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 26, 2026
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge